**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JAQUAN L. HALL,

      Plaintiff,

                                **Civil Action 2:23-cv-3742**
     v.                          **Judge James L. Graham**
                                **Magistrate Judge Elizabeth P. Deavers**

WASHINGTON COUNTY JAIL, *et al.*,

      Defendants.

## <ins>REPORT AND RECOMMENDATION</ins>

This matter is before the Undersigned for a Report and Recommendation on the parties' cross Motions for Summary Judgment. (ECF Nos. 54, 55, 56, 57, 59, 60.) Also before the Court is Defendants' Motion for Judgment on the Pleadings. (ECF Nos. 58, 61, 64.) The Motions are fully briefed. For the following reasons, the Undersigned **RECOMMENDS** that the Court **DENY** the Motion for Judgment on the Pleadings (ECF No. 58), **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 55) and **GRANT, in part,** Defendants' Motion for Summary Judgment (ECF No. 54) as set forth below on all claims except Plaintiff's retaliation claim relating to his placement in administrative segregation in September 2022 for possessing an extra bed sheet. With respect to this limited retaliation claim, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **DENIED, in part.**

### I.     BACKGROUND

Plaintiff, currently a prisoner at Ross Correctional Institution, asserts claims under 42 U.S.C. § 1983 arising from his time as a pretrial detainee at the Washington County Jail while awaiting trial on murder charges for a shooting that took place in Meigs County, Ohio, on April 4, 2021. (*See* Declaration of Kevin Carr, ECF No. 54-1 at ⁋ 5, "Carr Decl.") In his operative

complaint, the Amended Complaint, Plaintiff named as Defendants the Washington County Jail, Officer Joshua Elliott, Officer T.J. Flowers, Officer Ison, and Cpt. Carr.  The Court previously summarized the allegations of the Amended Complaint as follows.

> Among other things, he alleges that Officers Elliot and Flowers harassed him, threatened him, put him in danger, violated his attorney-client privilege, opened his legal mail, refused to send out his mail to the news media, and violated his right to the equal protection of the law. (ECF No. 5, PageID 53.) Factually, Plaintiff alleges that Elliot kept him in a cold classroom until 4:00 a.m. the night before Plaintiff had to go to court, made fun of him, his (unexplained) disorder, and his family, told other inmates details about his criminal charges, and told Plaintiff that Elliot was going to make sure Plaintiff spent the rest of his life in prison. (*Id.*) Plaintiff alleges Elliot committed perjury and lied on the stand. (*Id.*)

> Flowers was allegedly with Elliot the night in the classroom, and the incident allegedly occurred because of him. (*Id.*) Plaintiff says that Flowers also used racial slurs, wanted to fight Plaintiff in a bathroom, told other inmates about his criminal case, said he had a target on his back after Plaintiff filed a grievance against him, and put him in "the hole" for minor rule infractions for which other inmates would not get similarly punished. (*Id.*)

> Plaintiff appears to allege that Officer Ison was involved in an incident where Plaintiff discovered "blue ink" inside his food after he complained about Flowers. (ECF No. 5, PageID 55.) He also alleges that Ison repeated or was present for Flower's statement that he had a target on his back, told him to stay off the radar, and admitted that Plaintiff was being closely watched.  (*Id.*)

> Plaintiff alleges that he reported Flowers to Captain Carr, who told Plaintiff that Flowers was the reason he was being "targeted." (*Id.*) Plaintiff also alleges that Carr accused Plaintiff of trying to start a riot, and that Carr neglected his duties to ensure that his staff members were following the rules and policies. (*Id.*)

> Finally, Plaintiff alleges that this "lawsuit is against Washington County Jail." (*Id.*, PageID 52.) He says that the Jail:

>> Allowed these claims to happen without disciplinary action to their staff. Ignored my grievances, did not file every one of my complaints/grievances, and allowed violations of their policies to go unpunished. I've complain[ed] to administration about my Federal and Constitutional Rights being violated. Grievance officers failed to investigate and/or solve these issues.

> (*Id.*, PageID 56.)

As relief, Plaintiff seeks $1 million in damages from all Defendants, as well as a
$5,000 donation to a designated college fund, and several types of non-financial
orders.

(Order and Report and Recommendation, ECF No. 10 at 2-3.)

By Order and Report and Recommendation dated January 19, 2024, the Undersigned,

*inter alia*, recommended dismissal of all of Plaintiff's claims against the Washington County

Jail. (ECF No. 10.) Further, the Undersigned recommended that Plaintiff be permitted to

proceed further on the following claims:

1. The legal mail/attorney-client privilege claim(s) against Elliot and
   Flowers (First Amendment and/or Sixth Amendment);

2. The "classroom" claim against Elliot and Flowers (First Amendment
   and/or Fourteenth Amendment);

3. The retaliation claim(s) against Elliot, Flowers, Ison, and Carr
   concerning their alleged response to Plaintiff's grievances (First
   Amendment);

4. The related equal protection claim against Elliot and Flowers
   (Fourteenth Amendment);

5. The claim about blue ink in Plaintiff's food against Ison (presumably,
   the Fourteenth Amendment); and

6. The supervisory liability claim against Carr concerning Flowers'
   actions.

The Order and Report and Recommendation was adopted in full by the Court on July 10, 2024.

(ECF No. 20.)

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Legal Standard

A motion for judgment on the pleadings made under Federal Rule of Civil Procedure

12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *See Tucker v.*

*Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). To overcome such a motion, "a

3

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A motion for judgment on the pleadings should be granted when there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549. These standards apply equally when the plaintiff is *pro se*. Although a *pro se* litigant is entitled to a liberal construction of his pleadings and filings, he still must do more than assert bare legal conclusions, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### B. Analysis

Defendants move for judgment on the pleadings contending that Plaintiff failed to perfect service on any of them. In response, Plaintiff asserts that Defendants had to have been notified of this action and that a copy of the amended complaint was sent to their counsel. Further, he argues that this issue could have been raised earlier and wonders why time, including his and the Court's, has been wasted.

In the absence of "proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (citations omitted).  And without personal jurisdiction, a federal court is "powerless to proceed to an adjudication." *Id.* (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).

Here, it appears undisputed that Defendants were not properly served.  And, contrary to Plaintiff's understanding, "it is well established that mere knowledge of a lawsuit is not a substitute for proper service under Rule 4." *Farley v. Potter*, No. 3:22-CV-127-TAV-DCP, 2024 WL 3739668, at *9 (E.D. Tenn. Feb. 26, 2024) (citing *LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999); *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004)).

Nevertheless, a defendant's appearances, filings, and actions in the district court may constitute "legal submission to the jurisdiction of [that] court." *Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019) (citations and quotation omitted).  Not all conduct, however, "serves as constructive consent to personal jurisdiction." *Id*.  Instead, courts must consider whether a defendant's conduct "has given the plaintiff 'a reasonable expectation' that the defendant will defend the suit on the merits or whether the defendant has caused the court to 'go to some effort that would be wasted if personal jurisdiction is later found lacking.'" *Id.* (quoting *King*, 694 F.3d at 659 (internal quotation omitted).

Under the circumstances of this case, the Undersigned finds that Defendants have forfeited their insufficiency of service of process defense by their "extensive conduct in [this] litigation." *King*, 694 F.3d at 658.  Defendants' active participation in the litigation has included issuing discovery requests, deposing plaintiff, filing a 26-page summary judgment motion, and,

at least with respect to Defendant Carr, submitting an affidavit in support of that motion – actions all taken prior to the filing of their motion for judgment on the pleadings. Such conduct can only be construed as creating for Plaintiff the reasonable expectation of their intention to defend his suit on the merits.[1] *See, e.g., Gray v. City of Chattanooga*, No. 1:19-CV-217, 2022 WL 20637198, at *4 (E.D. Tenn. Mar. 9, 2022) (finding defendant's "active and extensive participation," including, *inter alia*, participating in some discovery, moving for summary judgment, and submitting an affidavit in support, gave Plaintiffs a reasonable expectation that defendant intended to defend the suit on the merits thereby forfeiting the service defense). For these reasons, it is **RECOMMENDED** that Defendants' Motion for Judgment on the Pleadings be **DENIED**. Following this recommendation, the Undersigned proceeds to consider the parties' cross motions for summary judgment.

### III.     CROSS MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001)); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address

---

[1] While the focus of Defendants' summary judgment motion is a qualified immunity defense, "the first prong of the qualified immunity analysis necessarily merges with the Court's decision on the merits of [a] [p]laintiff's claims." *Hysell v. Thorp*, No. 2:06-CV-170, 2009 WL 262426, at *14 (S.D. Ohio Feb. 2, 2009).

another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,' ... there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

Here, the parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other

motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994).

"The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991) (quoting *John v. State of La. (Bd. of Trs. for State Colls. & Univs.*), 757 F.2d 698, 705 (5th Cir.1985)). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.,* 929 F.2d at 248.

## IV. ANALYSIS

Defendants move for summary judgment, primarily claiming that they are entitled to qualified immunity on all of Plaintiff's claims.[2] Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). After a defendant "initially raises qualified immunity, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity." *Id.* (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)). "There are two components to the qualified immunity analysis." *Robinson v. City of Knoxville, Tennessee*, No. 24-5159, 2025

---

[2] Defendants also assert, without evidentiary support, that Plaintiff failed to exhaust his administrative remedies for many of his substantive claims as required under the PLRA. The Court will not consider such a defense raised in this way. Defendants further contend that, to the extent Plaintiff has asserted any state law claims, they are entitled to statutory immunity. The Court does not construe Plaintiff's allegations as asserting a claim under Ohio law.

WL 621451, at *3 (6th Cir. Feb. 26, 2025). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (citations and quotation omitted). The Court "has discretion to decide which of the two prongs of the qualified immunity analysis to address first." *Id*. (citing *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275 (6th Cir. 2020)). "[I]f the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate." *Tlapanco* at 648.

## A. LEGAL MAIL CLAIM (ELLIOT AND FLOWERS)

In his unverified Amended Complaint, Plaintiff alleges in exceptionally conclusory fashion that Defendant Elliot "open my legal mail, not sending out my mail to the news media." (ECF No. 5 at 5, PAGEID #: 53.) As for Defendant Flowers, Plaintiff alleges that he "opened my legal mail." (*Id*.) For purposes of the initial screen, the Undersigned construed Plaintiff's limited allegations as potentially asserting a claim arising under the First Amendment and/or Sixth Amendment. In the Report and Recommendation, the Court noted that the claim or claims "may relate to Plaintiff's assertion that Defendants refused to send out his mail to the news media, or they may relate to a claim that these officers read his incoming mail from his criminal defense attorney, which is how they knew the details about his case." (ECF No. 10 at n.1, PAGEID #: 99.) For this reason, the Court permitted further development.

Additional background relating to these claims is set forth in the parties' competing Motions, various exhibits, and deposition testimony. From those filings, the Court, at best, has gleaned the following.

Two different sets of circumstances relating to Plaintiff's alleged "legal mail" appear to be at issue here.  The first set of circumstances, which Plaintiff describes in his summary judgment motion as involving "a letter to a friend that was addressed as legal mail" in May 2022 was the subject of a full evidentiary hearing in the Common Pleas Court of Meigs County on September 22, 2022.  (ECF No. 55 at 8-9, PAGEID #: 897-898.)  Apparently, according to the transcript from that proceeding submitted by Defendants in support of their summary judgment motion, a detective investigating the murder of Kane Roush contacted the Washington County Jail with concerns regarding Plaintiff's outgoing mail.  (Direct Testimony of Agent Jonathan Jenkins, ECF No. 54-3 at 73-79; PAGEID ##: 829-835.)   Following that outreach, Defendant Elliot opened, inspected, and scanned the contents of Plaintiff's outgoing mail to the detective. (Direct Testimony of Defendant Joshua Elliot, ECF No. 54-3 at 91-102; PAGEID ##: 847-858.) At Plaintiff's criminal trial, the State attempted to use contents of an envelope Plaintiff had marked as "legal mail."  (Deposition of Jacquan Hall., Volume II, ECF No. 53 at 12-13; PAGEID ##: 507- 508 "Hall Depo."; Deposition Exhibit T PAGEID ##: 610-612.)  In response, Plaintiff filed a motion to dismiss, and the evidentiary hearing was held.  (Hall Depo., Volume II, Deposition Exhibit T, ECF No. 53 at 115-117; PAGEID ##: 610-612.)  The trial judge denied the motion, concluding that nothing in the correspondence was directed to or from counsel or privileged.  (ECF No. 54-3 at 130; PAGEID #: 886.)

The second set of circumstances appears to relate to piece of mail that was the subject of a grievance filed by Plaintiff several months later in November 2022, after his conviction.  (Hall Depo. Vol I, Exhibits L and M, ECF No. 52 at 183-186; PAGEID ##: 481-484; ECF No. 55-1 at 1-4, PAGEID #: 920-923.)  Plaintiff testified at his deposition that the mail at issue was a "letter … going to WTAP news station."  (*Id.* at 115; PAGEID #: 413.)  Plaintiff explained that he had

addressed the letter to the WTAP news station and had marked it as legal mail.  (*Id*.)  Plaintiff

further confirmed that no part of his legal team worked at the WTAP news station.  (*Id*.)

According to Plaintiff, the letter mentioned evidence at Plaintiff's trial, Joshua Elliott, what was

going on inside the prison, and that Plaintiff "was going to the hole."  (*Id*. at 115-116; PAGEID

##: 413-414.)   Additionally, Plaintiff testified, "Flowers' name was in there," it "mentioned

about [Plaintiff's] legal mail, and "evidence that was missing from trial proving [Plaintiff's]

innocence."  (*Id*. at 116; PAGEID #: 414.)  Plaintiff stated that he hoped that, upon receipt of the

letter, WTAP news would "cover [his] story and look into the jail" "or to [his] case."  (*Id.*)

Plaintiff further testified that he had "marked it as legal mail when it's not legal mail."  (*Id*. at

117, PAGEID #: 415.)  Plaintiff confirmed that he did not re-send the letter to his attorney,

judge, or probation.  (*Id*. at 118, PAGEID #: 416.)

        To be sure, prisoners have a First Amendment right to send and receive mail.  *Sallier v.*

*Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir.

1992)).   That right, however, may be subject to restrictions reasonably related to security or

other legitimate penological objectives.  *Id*.  "And it is well settled that prison officials do not

violate a prisoner's First Amendment rights by reading his outgoing non-legal mail."  *King v.*

*Anderson Cnty. Det. Facility*, No. 3:25-CV-66-KAC-JEM, 2025 WL 3124844, at *4 (E.D. Tenn.

Nov. 7, 2025) (citations omitted).   Further, even if the outgoing mail at issue is legal mail,

prison officials can open "legal mail" and inspect it for contraband.  *Id*. (citation omitted).

        In *Sallier*, the Sixth Circuit considered several "potential sources of protection for legal

mail, including the Sixth Amendment right to counsel, the First Amendment rights to petition for

redress of grievances and to access to the courts, and the prisoner's general interest in protecting

the attorney-client privilege."  *Rodriguez-Arango v. Pancheri*, No. 2:23-CV-34, 2023 WL

2552366, at *4 (W.D. Mich. Mar. 17, 2023). Not all outgoing mail, however, constitutes "legal mail," and "the question of what constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. As applicable here, the Ohio Administrative Code defines outgoing "legal mail" as "mail addressed to an attorney-at-law, a public service law office, a law school legal clinic, a court of law, or the correctional institution inspection committee." O.A.C. Rule 5120-9-18(C) (May 23, 2014). (ECF No. 54-2 at 1; PAGEID #: 753.)

Under the scenario outlined above, Plaintiff has failed to show a violation of either the First or Sixth Amendments arising from the alleged interference with his mail. Fundamentally, by Plaintiff's own admission, neither piece of mail was actually "legal mail." As he explained, he had simply marked it as such. Moreover, with respect to the May 2022 letter to a friend, the circumstances surrounding that mailing were the subject of a trial court ruling in the context of Plaintiff's criminal proceedings. This Court is barred from reviewing that decision under the *Rooker-Feldman* doctrine. *See, e.g., Williams v. Priv. Mortg. Invs. LLC*, No. 25-CV-12347, 2025 WL 2313198, at *3 (E.D. Mich. Aug. 11, 2025) (citing *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir. 2003) (when granting relief on a federal claim would imply that the state-court decision was incorrect, federal courts do not have jurisdiction).

Moreover, Plaintiff's mail claims arise from two alleged instances occurring several months apart. "[I]solated instances of interference with prisoners' mail" generally do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson*

for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation).

At most, construing all facts in Plaintiff's favor, he has alleged an inability to send non-legal mail to WTAP on one occasion.   According to his evidentiary submissions, he grieved this incident and was informed that the "next time [he mailed] something to WTAP," he should "leave the mail unsealed and [should not] put 'legal mail' on it, and it will be sent out."  (ECF No. 55-1 at 2; PAGEID #: 921.)  Plaintiff's allegations concerning this isolated incident are not sufficient to state a First Amendment claim.  Moreover, Plaintiff's allegations regarding this incident appear limited to Defendant Elliot, providing another basis for dismissal of any claim involving Plaintiff's non-legal mail intended for WTAP as it relates to Defendant Flowers.  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 850 (6th Cir. 2020) (citation omitted) ("To prevail in a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant was personally involved in the alleged constitutional violations.").

Finally, to the extent that Plaintiff may be contending that Defendants violated institutional policy regarding the handling of his mail, any such claim also fails.  The violation of institutional policies or procedures fails to give rise to a constitutional claim.  *Rush v. Burton,* No. 4:23-CV-67-DCLC-CHS, 2024 WL 54599, at *2 (E.D. Tenn. Jan. 4, 2024) (citing *Stanley v. Vining*, 602 F. 3d 767, 769 (6th Cir. 2010) ("[i]t has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983")).

Because Defendants did not violate any constitutional right, the Court need not address whether that right was clearly established.  Accordingly, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendants Elliot and Flowers relating to Plaintiff's legal mail claims**.**

13

## B. "CLASSROOM CLAIM" (ELLIOT AND FLOWERS)

In his unverified Amended Complaint, Plaintiff alleges that Defendant Elliot "sat [Plaintiff] in a cold classroom until 4 AM the night before [he] had court." (ECF No. 5 at 5, PAGEID #: 53.) With respect to Defendant Flowers, Plaintiff alleges that "[Flowers] was with Elliott that night before court, threatening to harm me." (*Id.*) For purposes of screening, the Court construed this claim as arising under the "First Amendment and/or Fourteenth Amendment." (ECF No. 10 at n.2; PAGEID #: 99-100.) The Court noted that it was "unclear whether Plaintiff presents this claim as a First Amendment access-to-courts type claim, or a Fourteenth Amendment unconstitutional-punishment type claim" but that further development was appropriate. (*Id.*).

In moving for summary judgment, Defendants provide additional background relating to this claim, relying largely on Plaintiff's deposition testimony. Apparently, this claim arises from Plaintiff having been escorted to a classroom by Defendants Flowers and Elliot after a verbal altercation between Plaintiff and Defendant Flowers. (Hall Depo. Vol. 1, ECF No. 52 at 27-44; 55-63; PAGEID #: 325-342; 353-361.) This incident, involving Plaintiff yelling and arguing with Defendant Flowers after lights out, occurred on October 18, 2021. After the incident, Defendants Flowers and Elliot took Plaintiff to a classroom to cool off. (*Id.*) In his deposition testimony, Plaintiff was unclear about how long he remained in the classroom, but he stated that he "had court at 8 AM" the next day, October 19, 2021. (*Id.*) Plaintiff attended the scheduled hearing which involved his completion of a financial disclosure form and the substitution of his counsel. (*Id.*) Plaintiff's criminal trial did not occur until September 2022. (*Id.*) Plaintiff does not dispute these facts as presented. Nor does he provide any evidence sufficient to raise a genuine issue of material fact regarding any First or Fourteenth claim.

14

For example, with respect to any First Amendment claim, prisoners, of course, have a well-established constitutional right of access to the courts, *see Lewis v. Casey*, 518 U.S. 343, 350 (1996), which "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Such a claim, however, requires Plaintiff to demonstrate four elements: (1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the court; and (4) a request for relief which is now otherwise unattainable. *Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023). Plaintiff fails to address any of the required elements of a First Amendment access to the courts claim. At best, viewing Plaintiff's "classroom claim" as such a claim, it relates to his criminal proceeding, a proceeding in which he was represented by counsel. A Plaintiff represented by counsel in a pending criminal case "cannot state a claim for a violation of his right to access the courts with respect to those proceedings." *Talley v. Dickson Cnty. Jail,* No. 3:23-CV-00983, 2023 WL 7115566, at *2 (M.D. Tenn. Oct. 27, 2023).

Any Fourteenth Amendment claim arising from this classroom incident also fails. "[P]retrial detainees are protected under the Due Process Clause of the Fourteenth Amendment. *Blue v. Bailey*, No. 1:24-CV-511, 2024 WL 3825248, at *4 (W.D. Mich. Aug. 15, 2024). The Fourteenth Amendment is implicated because pretrial detainees "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Accordingly, when a pretrial detainee raises a conditions of confinement claim, the "proper inquiry" is "whether those conditions amount to punishment." *Id.*; *see also Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 569 (6th Cir. 2020). A "particular condition or restriction of

pretrial detention" does not amount to "punishment" when it is "reasonably related to a legitimate governmental objective[.]" *Wolfish*, 441 U.S. at 539.

Here, Plaintiff does not contest that he was placed in the classroom following a verbal altercation with Defendant Flowers. Plaintiff also does not challenge the idea that such action bears a reasonable relationship to the legitimate objective of ensuring safety and security. Further, construing all available facts in Plaintiff's favor, his own testimony confirms that he remained in that classroom for not more than a few hours. Such a brief segregation is not so excessive as to constitute a punishment. *See, e.g., Elliot v. Conner*, No. 3:23-CV-01008, 2023 WL 7545036, at *3 (M.D. Tenn. Nov. 13, 2023) (45-day placement in segregation was not excessive following plaintiff's involvement in a fight). Similarly, Plaintiff's suggestions of verbal abuse or harassment, in connection with this claim or otherwise, do not support any Fourteenth Amendment claim. "As a matter of law, a prison official defendant's verbal abuse and harassment towards a confined plaintiff do not constitute cruel and unusual punishment under the Eighth Amendment—applicable to convicted inmates—nor under the Fourteenth Amendment—applicable to pretrial detainees." *Green v. Eddy*, No. 1:24-CV-12086, 2025 WL 845176, at *2 (E.D. Mich. Mar. 18, 2025) (citing *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (additional citations omitted).

Because Defendants did not violate Plaintiff's right of access to the courts or his Fourteenth Amendment rights in connection with Plaintiff's placement in a classroom, the Court need not address whether such rights were clearly established. Accordingly, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendants Elliot and Flowers relating to these circumstances.

16

## C.  RETALIATION CLAIM (ALL DEFENDANTS)

As confirmed above, Plaintiff's allegations of retaliation in his unverified Amended Complaint are quite scant.  At best, Plaintiff makes unspecific suggestions that Defendant Elliot discussed Plaintiff's personal information with other inmates after Plaintiff filed grievances against Defendant Elliot, that Defendant Flowers "targeted" Plaintiff after Plaintiff "wrote him up," that Defendant Ison informed Plaintiff when taking him to "the hole" that "this is what happens when you put a target on your back" and that when Plaintiff reported Defendant Flowers, presumably to Defendant Carr, Defendant Carr, again presumably, told Plaintiff that Defendant Flowers was the reason Plaintiff "was being targeted."[3]

Plaintiff's deposition testimony sheds some additional light.  For example, in the context of being questioned about his allegations against Elliot, Plaintiff testified that being put in the hole for having an extra bedsheet was the "main [infraction] that [he] was really pissed off about."  (Hall Depo., Vol. 1, ECF No. 52 at 88-89; PAGEID ##: 386-387.)  Plaintiff further testified that Defendant Elliot "had a vendetta against [him] after [Plaintiff] ran these numerous of grievances against him."  (*Id.* at 387.)  Plaintiff also described Defendant Elliot using "harassing language and … name calling."  (*Id*. at 388-389.)  Additionally, when asked about his post-conviction petition, Plaintiff testified regarding the affidavit he submitted in support, dated February 2, 2024, in which he stated that "[he] was targeted and lost privileges after [he] had written grievances about officers abusing their power and using racial slurs" and specifically cites being "placed in the hole for having an extra bed sheet after being shook down."  (*Id.* at 94-95; PAGEID ##: 589-590.)

---

[3] At his deposition, however, Plaintiff testified that Defendant Carr did not tell him this.  (Hall Depo. Vol. I, ECF No. 52 at 93-94; PAGEID ##: 391-392.)

In his Motion for Summary Judgment, for the first time, Plaintiff provides additional unsworn allegations which appear primarily directed to Defendant Flowers.  For example, Plaintiff alleges, with respect to Defendant Flowers, that he "told me I had a target on my back after I wrote him up.  Put me in the hold for minor rule infractions …."  (EF No. 5 at 5; PAGEID #: 53.)  Further, Plaintiff states that Defendant Flowers "harass[ed] him … because [Plaintiff] wrote him up weeks prior."  (ECF No. 55 at 14; PAGEID #: 903.)  Plaintiff also states that he was the only person sent to the hole after a shakedown of his dorm in which Defendant Flowers was involved.  (*Id*. at 17; PAGEID #: 906.)  Additionally, Plaintiff states that Defendant Flowers took his prayer rugs after he reported Defendant Flowers's use of a racial slur.  (*Id*. at 16-17; PAGEID #: 905-906.)  For their part, Defendants contend that any grievances Plaintiff filed had no bearing on any discipline he received for violating rules of the Washington County Jail.  In support, they cite to a litany of rules violations committed by Plaintiff, including possession of a weapon and assault on another inmate.

With respect to the new allegations raised for the first time in Plaintiff's Motion for Summary Judgment, the Court will not consider them.  The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105 at *3 (6th Cir. May 5, 2010) (citations omitted).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001)

(affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").  Accordingly, the Court will not consider any distinct claim of retaliation arising directly from the confiscation of Plaintiff's prayer rugs.[4]

The same holds for Plaintiff's allegations that Defendant Flowers was gratuitously harassing him.  Plaintiff appears to rely on two Call Slip requests and one Field Interview Report to support his allegations. (ECF No. 55-4, PAGEID #: 960-964.)  At best, these documents demonstrate that, on August 21, 2021, Plaintiff reported that "certain Cos have been discussing and giving out information about [his] case."  (Exhibit P-E; ECF No. 55-4 at 1; PAGEID #: 960.)  On November 2, 2021, Plaintiff filed another grievance request regarding Elliot and Flowers and their alleged verbal harassment of him.  (Exhibit P-F; ECF No. 55-4 at 1; PAGEID #: 962.)  In between these filings, on October 18, 2021, Officer Flowers filed a Field Interview Report explaining the circumstances leading to what has been deemed Plaintiff's "classroom claim."  (Exhibit P-G, ECF No. 55-4 at 5; PAGEID #: 964.)   These allegations, involving incidents in 2021, appear unrelated to the bedsheet infraction allegations.  Moreover, even if the Court were to consider these allegations, Plaintiff has failed to make any specific connection between the filing of these grievances and an adverse action.  Finally, "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."  *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th. Cir. 2012).

---

[4] With respect to the issue regarding his prayer rugs, Plaintiff cited to another grievance dated September 7, 2022.  (Exhibit P-S, ECF No. 55-7 at 17-18; PAGEID ##:  1011-1012.)  In that document, Plaintiff asserted that his prayer rugs were taken by Defendant Flowers after Plaintiff reported Defendant Flowers's racial slur to the captain.  (*Id*.)  The Jail Staff response reveals that Plaintiff was advised that he could only have one prayer rug, it could only be used for religious services, and when not in use it was to be kept folded and off the floor.  (*Id*.)

This leaves only Plaintiff's allegation of being placed in the hole following a shakedown after he was found to have had an extra bed sheet, the issue about which Plaintiff testified at his deposition. To the best of the Court's understanding, Plaintiff filed a grievance on September 4, 2022, complaining of a C/O telling him a racist joke and using a racist slur, prompting a conversation with Defendant Carr. (Exhibit P-N, ECF No. 55-6 at 14; PAGEID #: 994.) On September 7, 2022, Plaintiff filed the grievance against Defendant Flowers relating to his prayer rugs. (Exhibit P-S, ECF No. 55-7 at 18; PAGEID #: 1011.) Shortly after Plaintiff filed these grievances, a shakedown occurred in Plaintiff's dorm. On September 10, 2022, Plaintiff filed a grievance questioning the bedsheet violation, suggesting that the shakedown occurred sometime between September 7 and September 10, 2022. (Hall Depo. Vol. I, Exhibit N, ECF No. 52 at 187; PAGEID #: 485.) In that grievance, Plaintiff states that Defendant Flowers found extra bedding on "multiple people's rack[s] and they did not get punished for the same actions." (*Id.*) Plaintiff also cites to another grievance he claims to have filed on September 10, 2022. (Exhibit P-T, ECF No. 55-8 at 1-8; PAGEID ##: 1013- 1014.) According to that document, Plaintiff admits to having had an extra bed sheet and blanket and acknowledges the necessity that he be placed in lockdown and take responsibility for his actions. (*Id.*) The document does not refer to Defendant Flowers' or Defendant Elliot's involvement in the alleged incident.

Defendants provide the following additional background information. On September 4, 2022, Plaintiff filed a written grievance related to certain officer's conduct. (Hall Depo., Vol. I, ECF No. 52, Exhibit J; PAGEID #: 476.) In that grievance, Plaintiff alleged that an officer made a racist joke using a racial slur. (*Id.*) On September 6, 2022, Plaintiff filed another written grievance related to officers' conduct. (*Id.* at Exhibit K, PAGEID #: 477.) In that grievance, Plaintiff alleged that he and other inmates wanted to speak "with Major Rhodes and Captain Carr

20

… about the behavior of certain C/Os and the incident that occurred of the last week." (*Id.*) Defendant Carr met with Plaintiff to address his concerns and instructed his command staff to investigate and take corrective action. (Carr Decl., ECF No. 54-1 at ▐ 15.) Although the investigation did not determine whether racial comments were made, all officers were required to complete training on the jail's communication policies. (*Id.* at ▐▐ 20, 21.)

To be sure, a prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation under § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id.* at 394-99. Further, if Plaintiff meets his burden, the burden of production shifts to the defendant, and if the defendant "can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X* 175 F.3d at 399.

With respect to the first element, filing a non-frivolous grievance against a prison official is conduct protected by the First Amendment. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Hill v. Lappin,* 630 F.3d 468, 472 (6th Cir. 2010). Here, there is no dispute that Plaintiff filed a grievance regarding a C/O's racist joke and use of a racial slur. Defendant Carr confirmed this in his Declaration. (Carr Decl. ECF No. 54-1 at ▐ 12; PAGEID #: 736.) The filing of this grievance prompted Defendant Carr to meet with Plaintiff and Defendant Carr agreed to "mandate appropriate cultural, racial, and/or ethnic diversity and relations training to the staff." (*Id*. at ▐ 16; PAGEID #: 737.) This is sufficient evidence from which a jury could

21

conclude that this particular grievance was non-frivolous.  Further, there is indication in the record to support Plaintiff's explanation in his Motion for Summary Judgment that Defendant Flowers was the focus of that grievance.  (*Id*., Exhibit F, at PAGEID #: 742; Hall Depo., Vol. I, ECF No. 52 at 16; PAGEID #: 314.)

As for the second element, being taken to administrative segregation or comparable transfer action, with its corresponding loss of privileges may be a sufficiently adverse action to support a retaliation claim.  *Kennedy v. Curtis*, No. 2:19-CV-13210, 2023 WL 2974953, at *8 (E.D. Mich. Jan. 24, 2023), *report and recommendation adopted*, No. 19-13210, 2023 WL 2368017 (E.D. Mich. Mar. 6, 2023).  Here, Plaintiff testified at his deposition that he received thirteen days in the hole for the bedsheet infraction.  (Hall Depo. Vol. I, ECF No. 52 at 89; PAGEID #: 387.)   A grievance and response attached to Plaintiff's Motion for Summary Judgment indicates that Plaintiff received ten days for the bedsheet infraction.  (ECF No. 55-8 at 2 Exhibit T; PAGEID ##: 1013-1014.)  Beyond this information, there is no evidence confirming the length of Plaintiff's stay in the hole for this infraction or the extent of any loss of privileges he suffered while in the hole.  At the same time, however, there is nothing to allow the Court to conclude that this action is so inconsequential, under the circumstances, as to readily defeat Plaintiff's retaliation claim.

The third element of a retaliation claim, causation, is a factual issue which may be satisfied by circumstantial evidence.  *Richards v. Perttu,* 96 F.4th 911, 919 (6th Cir.), *cert. granted*, 145 S. Ct. 119 (2024), and *aff'd,* 605 U.S. 460 (2025).  "[T]o prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured."  *Kennedy*, at *8 (quoting *Coleman v. Mohlman*, No. 2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5645715 (E.D.

Mich. Sept. 22, 2020)). "The retaliatory motive must be a 'but-for' cause to the adverse action." *Id*. In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Branch v. Grahn*, No. 1:25-CV-337, 2025 WL 2985259, at *10 (W.D. Mich. Oct. 23, 2025) (citing *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)). Evidence of temporal proximity between the filing of grievances and subsequent adverse action is, by itself, generally insufficient to establish retaliatory motive. *Rutherford v. Free*, No. 2:24-CV-764, 2025 WL 938506, at *3 (S.D. Ohio Mar. 28, 2025) (citing *Hill,* 630 F.3d 468, 476 (stating that temporal proximity may show retaliatory motive *if paired with other supporting evidence*)).

Here, Plaintiff's evidence suggests approximately four days between the filing of grievance involving the racist joke or racial slur and his being sent to the hole for the bed sheet infraction. Construing the record in Plaintiff's favor, however, that is not all the evidence bearing on the issue of causation. That is, Plaintiff also testified at his deposition that Defendant Flowers had found other inmates in possession of extra bed sheets, but they were not sent to the hole. (Hall Depo. Vol. I, ECF No. 52 at 94; PAGEID #: 392.) Further, in his deposition, Plaintiff described that, when he was taken to administrative segregation, he was told by Defendant Ison that "this is what happens when you have a target on your back." (Hall Depo. Vol. II, ECF No. 53 at 95; PAGEID #: 590.) Plaintiff also testified that he was told it "wasn't personal" and that he was told that "the administration's making them enforce the rules on me." (Hall Depo Vol. II, ECF No. 53 at 95; PAGEID #: 590 and Hall Depo. Vol. I, ECF No. 52 at 122; PAGEID #: 420.) Nevertheless, as with the second element, the evidence in the record overall is limited on this element. Moreover, the parties do not directly address the issue of causation in their briefing. Accordingly, on this record, the Court cannot conclude that

23

Plaintiff's filing a grievance regarding the incident involving the racist joke/racial slur, which prompted Defendant Carr to "mandate appropriate cultural, racial and/or ethnic diversity and relations training to the staff," was not the but for cause of Plaintiff's being placed in administrative segregation for his possession of an extra bedsheet.  (Carr Decl., ECF No. 54-1 at ¶¶ 16, 17.)

Importantly, as noted above, once a prisoner can show that a defendant's adverse action was at least partially motivated by the prisoner's protected conduct, the burden shifts to the defendant to show they would have taken the same action even absent such protected conduct. *Hill*, 630 F.3d at 675.  Defendants also have not addressed this issue in moving for summary judgment.  To be sure, they have argued that Plaintiff violated numerous jail rules during his time in the Washington County Jail.  (ECF No. 54 at 15; PAGEID #: 723.)  Further, they have provided evidentiary support for this assertion relating to Plaintiff's throwing another inmate's belongings on the floor in October 2021 (Hall Depo. Vol. II, Exhibit V, ECF No. 53 at 119; PAGEID #: 614); violently assaulting another inmate in February 2022 (*Id.* Exhibit W, ECF No. 53 at 122-132; PAGEID ##: 617-627), committing a theft offense in April 2022 (*Id.* Exhibit X, ECF No. 53 at 137; PAGEID #: 632), and concealing a razor in extra bedsheets in May 2022. (*Id.* Exhibit Y, ECF No. 53 at 144-152; PAGEID ##: 639-647.)  They have not, however, addressed whether Plaintiff would have been sent to administrative segregation for possessing an extra bed sheet in the absence of his September 2022 grievance which prompted a response from Defendant Carr.

To summarize, the parties have failed to address in any serious way the second and third elements of Plaintiff's retaliation claim relating to Plaintiff's being placed in "the hole" following the shakedown of his dorm in September 2022.  Further, Defendants have not

addressed whether Plaintiff would have been sent to administrative segregation for possessing an

extra bed sheet regardless of his September 2022 grievance and Defendant Carr's response.

Thus, on the current record, neither party has established that no genuine issue of material fact

exists as to this specific, limited claim such that summary judgment in their favor is warranted.

For this reason, it is **RECOMMENDED** that both Motions for Summary Judgment be **DENIED**

as to Plaintiff's First Amendment retaliation claim against arising from this specific incident.

Finally, to the extent that Plaintiff may be contending that any Defendants violated

institutional harassment policies, any such claim fails. The violation of institutional policies or

procedures fails to give rise to a constitutional claim. *Rush v. Burton,* No. 4:23-CV-67-DCLC-

CHS, 2024 WL 54599, at *2 (E.D. Tenn. Jan. 4, 2024) (citing *Stanley v. Vining*, 602 F. 3d 767,

769 (6th Cir. 2010) ("[i]t has long been established that violation of a state statute or regulation is

insufficient alone to make a claim cognizable under § 1983")).

### D. EQUAL PROTECTION CLAIM (ELLIOT AND FLOWERS)

Plaintiff's claim in his Complaint that Defendants Elliot and Flowers violated his equal

protection rights is wholly conclusory and remains so at the summary judgment stage. At the

very most, Plaintiff alleges that Defendant Flowers put him "in the hole for minor rule

infractions, but … let it go for other inmates." (ECF No. 5 at 5; PAGEID #: 53.)

The Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution provides that no state shall "deny to any person within its jurisdiction the equal

protection of the laws." U.S. Const. amend. XIV, § 1. To sufficiently plead an equal protection

claim, the plaintiff "must allege facts that support his allegation that others were treated

differently than he was, and he must allege facts that would support the inference that those who

were treated differently were similarly situated in all relevant respects." *Petersmark v. Burgess*,

No. 1:24-CV-604, 2024 WL 3648074, at \*17–18 (W.D. Mich. Aug. 5, 2024) (citing *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011)). Without supporting facts of disparate treatment, an equal protection claim fails.

In this case, Plaintiff has not set forth any specific facts supporting a finding of disparate treatment. To the extent he claims that he was punished where others were not, he provides no evidentiary support. At most, for purposes of an equal protection claim, he has offered only vague allegations that other unidentified individuals were not punished for similar infractions. Importantly, for summary judgment purposes, a bare assertion that a plaintiff "was treated one way and everyone else another ... has never been thought to raise an equal protection claim." *Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 529 (6th Cir. 2023). That is, at most, all Plaintiff has offered here. Because disparate treatment is a necessary element for an equal protection claim, Plaintiff cannot establish the violation of any constitutional right and the Court need not address whether that right was clearly established. Accordingly, it is **RECOMMENDED** that summary judgment be granted in favor of Defendants Elliot and Flowers on Plaintiff's claim for an equal protection violation.

### E. "BLUE INK" CLAIM (ISON)

Aside from any suggestion of retaliation, Plaintiff alleged the following with respect to Defendant Ison:

> After being released [from Administrative Segregation], I went back into general population and days after I discovered blue ink inside my food. I get Muslim trays the day they served pork, and that day I had chicken. When I cut into it I seen it was blue and a note was underneath it. I tried to report this to an officer, but I was ignored. The following morning Ison came back there to take me to the hole for corresponding with other inmates. I did not go to the hole because I wrote down in my notebook that incident that occurred. He read my incident report book and that was the only thing that saved me. I asked him why you keep tryin to put me down. He admitted Admin watchin me close.

26

(ECF No. 5 at 7; PAGEID #: 55.)  For purposes of the initial screen, the Court characterized this "claim about blue ink in Plaintiff's food" as presumably arising under the Fourteenth Amendment.  (ECF No. 10 at 6; PAGEID #: 100.)   Further, the Court noted that it was not clear whether "Plaintiff is alleging that Ison put the blue ink in his food, or that Ison failed to appropriately respond when Plaintiff complained about the blue ink in his food."  (*Id.* at n. 3.) On summary judgment, Defendants contend that any such claim fails under either theory.  The Court agrees.

Citing Plaintiff's deposition testimony, Defendants' summary judgment motion provides additional background relevant to this claim.  As Defendants explain, when asked if he had any idea how blue ink came to be in his chicken, Plaintiff testified:

> …there was a note right under the chicken, and then, so -- the only reason why I say 'note," because it had writing on it. And so it had seeped into the chicken from the bottom, and then, so there was blue ink into the chicken. And then, so I couldn't read the -- obviously, because it's hot. You see what I'm saying? The moisture from the chicken going to go into the paper, so it blurred it out. So I couldn't really read what was on it.

(ECF No. 54 at PAGEID #: 726 citing Hall Depo. Vol. 1, ECF No. 52, at PAGEID #: 363.)  Defendants further assert that when asked who he suspected wrote the note he found under his chicken, Plaintiff testified that he believed it was James Warner, another inmate who was working in the kitchen or "another officer that… worked back there in the kitchen who knew that I was getting my trays."  (*Id.*, at Page ID ##: 366-367.)

For his part, Plaintiff does not challenge Defendants' recitation of this evidence.  Nor does he provide any of his own evidence sufficient to raise any genuine issue of material fact as to whether Defendant Ison placed the note under Plaintiff's food or caused the blue ink to be in Plaintiff's food.  Thus, based on Plaintiff's own testimony, Defendant Ison had no personal involvement in the "blue ink" incident.  It is well settled that "[e]ach defendant must be

'personally involved' in the unconstitutional action in order to be found liable under § 1983. *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020).   Accordingly, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendant Ison as to any claim under this theory.

Similarly, any claim that Defendant Ison failed to investigate Plaintiff's claim regarding blue ink in his food also fails.  The failure to investigate a prisoner's complaint or grievance does not state a claim for relief.  *Smith v. Washington*, No. 2:23-CV-12903, 2024 WL 233730, at *3 (E.D. Mich. Jan. 22, 2024) (citing *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003)). Accordingly, because Plaintiff has not established the violation of a constitutional right based on an alleged failure to investigate, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendant Ison as to any claim under this theory.

Beyond this, two things are of note for purposes of clarity.  In his summary judgment filings, Plaintiff suggests that the circumstances surrounding the blue ink in his food violated certain jail policies.  Even if the Court were to consider such a claim raised in this way, it would not succeed.  As explained above, the violation of institutional policies or procedures fails to give rise to a constitutional claim.  *Rush,* 2024 WL 54599, at *2.  Additionally, the Court does not construe Plaintiff's allegations as attempting to assert any Fourteenth Amendment claim arising from any punishment for the blue ink incident.   Plaintiff's own allegations confirm that Defendant Ison accepted Plaintiff's explanation of the incident and did not take him to "the hole" for corresponding with other inmates.  Accordingly, because Plaintiff has not established Defendant Ison's violation of any constitutional right, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendant Ison on Plaintiff's "blue ink" claim in its entirety.

## F.  SUPERVISORY LIABILITY CLAIM (CARR)

Plaintiff's allegations against Defendant Carr state, in their entirety:

Cpt. Carr - When I reported Flowers I was told he was the reason why I was being targeted.  I sat down with him and a Lt. about an issue that occurred between two officers using excesses force.  He accused me of starting a riot.  He then said he would make it real strict, and asked me if I wanted him to start coming in watching the cameras.  He wasn't informed of every incident that occurred in the jail because of chain of command, according to him.  He neglected his duties to ensure his staff was ethically following the rules and policies.

ECF No. 5 at 7; PAGEID #: 55.)  Aside from the information relating to the limited retaliation claim described above, Plaintiff's summary judgment filings shed little light on Plaintiff's additional claims against Defendant Carr.  For their part, Defendants explain that, at his deposition, Plaintiff alleged that Defendant Carr took no action after being advised that Defendant Flowers threatened to assault Plaintiff.

Thus Plaintiff's allegations, construed in his favor, confirm that for all claims, besides perhaps his retaliation claim, Plaintiff is suing Defendant Carr in his supervisory role.  The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S 658, 691 (1978).  "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005).  There is no *respondeat superior* liability where the plaintiff alleges only that the defendant merely failed to act or control employees. *Shorts v. Bartholomew*, 255 F. App'x 46, 53 (6th Cir. 2007); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998).  That appears to be what Plaintiff alleges here with respect to all but the retaliation claim.

29

Moreover, to the extent that Plaintiff asserts that Defendant Carr failed to properly act upon Plaintiff's grievances, § 1983 liability may not be imposed upon Defendant Carr on this basis. *Smith v. Par.,* No. 1:22-CV-978, 2023 WL 2399827, at *3 (W.D. Mich. Mar. 8, 2023) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)) simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.). The same is true as to any claim that Defendant Carr violated institutional policy. As stated above, violations of institutional policy do not rise to the level of a constitutional claim. *Rush,* 2024 WL 54599, at *2.

"Accordingly, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendant Carr on all claims but Plaintiff's limited retaliation claim as recognized herein.

## V.    CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that the Court **DENY** the Motion for Judgment on the Pleadings (ECF No. 58), **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 55) and **GRANT, in part,** Defendants' Motion for Summary Judgment (ECF No. 54) on all claims except Plaintiff's limited retaliation claim relating to his placement in administrative segregation in September 2022 for possessing an extra bed sheet. With respect to this limited retaliation claim, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **DENIED, in part.**

### PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within 14 days, file and serve on all parties its objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within 14 days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review of by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**Date: December 8, 2025**

*/s/ Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**