**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Jaquan L. Hall,** | : | |
| | : | **Case No. 2:23-cv-03742** |
| **Plaintiff,** | : | |
| **v.** | : | **Judge Graham** |
| | : | |
| **Washington County Jail, *et al.*,** | : | **Magistrate Judge Shimeall** |
| | : | |
| **Defendant(s).** | : | |

**OPINION & ORDER**

This matter is before the Court upon the Report and Recommendations ("R&R") (doc. 65) of the Magistrate Judge, which addressed the parties' cross motions for summary judgement (doc. 54; doc. 55) as well as the Defendants' motion for judgment on the pleadings (doc. 58). In sum, the Magistrate Judge recommended that Defendants' motion for summary judgment be granted with respect to all claims except for Plaintiff's claim for retaliation against Defendant Joshua Elliott, and that the remaining motions be denied. For the reasons that follow, the Court **ADOPTS, in part**, the recommendations of the Magistrate Judge, and therefore **DENIES** Plaintiff's Motion for Summary Judgment, **DENIES** Defendants' motion for judgment on the pleadings, **GRANTS** Defendants' motion for summary judgment.

**Background**

At all times relevant to this action, Plaintiff Jaquan Hall ("Plaintiff") was a pretrial detainee at the Washington County Jail. Plaintiff brought this action, *pro se*, against the Washington County Jail, Officer Joshua Elliott, Officer T.J. Flowers,

Officer Ison, and Captain Kevin Carr. Doc. 5. Washington County Jail was dismissed as a party after initial screening, and the following claims were permitted to proceed, as construed by the Magistrate Judge in a previous Report and Recommendation:

1. The legal mail/attorney-client privilege claim(s) against Elliott and Flowers (First Amendment and/or Sixth Amendment);
2. The "classroom" claim against Elliott and Flowers (First Amendment and/or Fourteenth Amendment);
3. The retaliation claim(s) against Elliott, Flowers, Ison, and Carr concerning their alleged response to Plaintiff's grievances (First Amendment);
4. The related equal protection claim against Elliott and Flowers (Fourteenth Amendment);
5. The claim about blue ink in Plaintiff's food against Ison (presumably, the Fourteenth Amendment); and
6. The Supervisory liability claim against Carr concerning Flowers' actions.

*See* doc. 10. The Court adopted the previous Report and Recommendation in full. *See* doc. 20.

Following discovery, Defendants moved for summary judgment, arguing that they are entitled to both statutory and qualified immunity, and that Plaintiff failed to exhaust his administrative remedies. Doc. 54. Plaintiff filed a cross motion for summary judgment shortly thereafter. Doc. 55. Finally, Defendants filed a motion for judgment on the pleadings based on Plaintiff's failure to perfect service of his amended complaint. Doc. 58.

In the R&R, the Magistrate Judge first addressed the motion for judgment on the pleadings and concluded that Defendants' substantial participation in this case effectively forfeited their sufficiency of process defense. Doc. 65, # 1121. Turning to

the motions for summary judgment, the Magistrate Judge concluded that Defendants were entitled to summary judgment on all claims except the retaliation claim against Elliott. *Id.* at # 1146. Defendants objected to the R&R with regard to its recommendations that the motion for judgment on the pleadings be denied and the retaliation claim should proceed. Doc. 66. Plaintiff objected to the R&R with regard to the recommendations that his motion for summary judgment be denied and that the Defendants' motion be granted as to all but his retaliation claim. Doc. 67. The objections are now ripe before the Court.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The standard of review remains the same when reviewing cross-motions for summary judgment versus a motion filed by only one party. *Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016). Denying summary judgment for one movant does not mean the Court must grant summary judgment for the other. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

### ***Objections to a Report and Recommendation***

If a party raises timely objections to the report and recommendation of a magistrate judge, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 904 (E.D. Mich. 2021) "The filing of objections provides the district court with the opportunity… to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Hardy v. Comm'r of Soc. Sec.*, 554

F. Supp. 3d 900, 904 (E.D. Mich. 2021) (quoting *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) and *Thomas v. Arn*, 474 U.S. 140, 147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985)). Therefore, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Smith v. Detroit Fed'n of Tchrs. Loc. 231, Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).

## DISCUSSION

Like the Magistrate Judge, the Court will first address Defendants' motion for judgment on the pleadings before addressing the cross motions for summary judgment. For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, and the Court **OVERRULES, in part, and SUSTAINS, in part**, Defendants' objections.

### I. Judgment on the Pleadings Due to Lack of Service is not Warranted.

Defendants' sole argument for judgment on the pleadings is that Plaintiff's failure to perfect service means the Court lacks personal jurisdiction over the unserved Defendants, requiring dismissal of the claims against them. *See* doc. 58. Indeed, "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012). And a court without personal jurisdiction over a party is "powerless to proceed to an adjudication" against them. *Id.* (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). A party's awareness of the suit is no substitute for proper service. *Id.* at 655-56.

As the Magistrate Judge noted, "it appears undisputed that Defendants were not properly served" in this case. Doc. 65, # 1121. This, Defendants contend in their objections, "should be the end of the inquiry." Doc. 66, # 1149. But the law recognizes that a sufficiency-of-service defense may be forfeited based upon the defendant's conduct in the litigation. *See King*, 694 F.3d at 658 ("Even where a defendant properly preserves a Rule 12(b) defense by including it in an answer, he may forfeit the right to seek a ruling on the defense at a later juncture through his conduct during the litigation."). The operative inquiry is whether the un-served defendant's conduct "has given the plaintiff 'a reasonable expectation' that the defendant will defend the suit on the merits or whether the defendant has caused the court to 'go to some effort that would be wasted if personal jurisdiction is later found lacking.'" *Id.* at 659 (quoting *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir.2011)).

Here, the Magistrate Judge found that Defendants forfeited their sufficiency-of-process defense based on conduct which included "issuing discovery requests, deposing plaintiff, filing a 26-page summary judgment motion, and, at least with respect to Defendant Carr, submitting an affidavit in support of that motion." Doc. 65, # 1122. The Court agrees that this conduct gave Plaintiff a reasonable expectation that Defendants would defend the suit on the merits.

True, Defendants preserved the defense in their answers to both the original complaint and the amended complaint. *See* doc. 3, doc. 6. And, in the supplemental cover sheet filed when this matter was removed from state court, Defendants specifically listed the parties who had not yet been served. *See* doc. 1-4, # 24. But the

latest reference to lack of service—in their answer to the amended complaint—was filed on December 19, 2023. Doc. 6. Nearly 500 days would pass before Defendants asserted the defense again in their motion for judgment on the pleadings, filed April 30, 2025. In the meantime, the litigation proceeded in routine fashion, with Defendants actively participating in the manner described by the Magistrate Judge.[1] Doc. 65, # 1122.

Defendants next argue that the Magistrate Judge erred by failing to consider the sufficiency of service "on an *individualized basis*." Doc. 66, # 1151. They concede that the Magistrate Judge's recommendation "is understandable with consideration for Defendant Kevin Carr, who actually participated by providing an affidavit in support of a motion for summary judgment," but argue that "with respect to Defendants Joshua Elliot, T.J. Flowers, and Shaun Ison, there was no 'active participation' in this lawsuit at all." *Id.* at # 1153-54.

The Court agrees that sufficiency of service is an individual inquiry, and it's true that Defendant Carr was the only defendant to submit an affidavit in this case. But, as noted above, the inquiry as to whether Defendants have *forfeited* their sufficiency-of-service defense looks to whether their conduct has given Plaintiff a reasonable expectation that they will defend the suit on the merits. As far as the

[1] Defendants frame their position as a catch-22, such that they "could not simply rely upon the defense of lack of service alone on the chance that Plaintiff eventually corrected his failure and Defendants' opportunity to defend the case on the merits was prejudiced." Doc. 66, # 1151. But what has changed? On either an early motion to dismiss or the current motion for judgment on the pleadings, dismissal for insufficient service would be without prejudice, allowing Plaintiff an opportunity to "eventually [correct] his failure" to perfect service. *Id.*

Court is aware, all of Defendants' filings were submitted on behalf of *all* Defendants.[2] Plaintiff, proceeding *pro se*, could reasonably understand that to mean that all Defendants were actively participating in the litigation, and thus his expectation that they would defend the suit on the merits (which, as the Magistrate Judge pointed out, they did, in their motion for summary judgment (*see* doc. 65, # 1122 n.1)) was reasonable. Therefore, the Court will adopt the Magistrate Judge's recommendation and deny Defendants' motion for judgment on the pleadings.

**II. Summary Judgment in Favor of the Defendants is Warranted on All Claims in the Amended Complaint.**

Both parties contend that they are entitled to judgment as a matter of law on all of Plaintiff's claims based on the undisputed factual record before the Court. The Court addresses each claim in turn.

*1. Legal Mail Claim.*

Plaintiff brought a claim alleging certain Defendants would open and read his legal mail outside of his presence, which the Magistrate Judge construed as "potentially asserting a claim arising under the First Amendment and/or Sixth Amendment." Doc. 65, # 1125. Indeed, the Sixth circuit has recognized that interference with a prisoner's legal mail "implicate[s] a prisoner's right of access to the courts, of petitioning the government to redress grievances, or of competent representation by counsel." *Sallier v. Brooks*, 343 F.3d 868, 876 (6th Cir. 2003). Non-

[2] *See, e.g.*, doc. 7 ("Defendants Washington County Jail, Officer Joshua Elliott, Officer T.J. Flowers, Officer Ison, and Cpt. Carr (collectively 'Defendants') hereby move…"); doc. 12 (notice filed on behalf of the same Defendants); doc. 16 (responsive briefing filed on behalf of same Defendants); etc.

legal mail, however, can generally be screened by prison officials for the purpose of institutional security. *See Meadows v. Hopkins*, 713 F.2d 206, 210 (6th Cir. 1983).

That distinction makes the resolution of this claim simple, because, as the Magistrate Judge put it, "[f]undamentally, by Plaintiff's own admission, neither piece of mail was actually 'legal mail.'" Doc. 65, # 1128. Rather, Plaintiff simply labeled as "legal mail" items which he understood were in fact non-legal mailings. *See* doc. 52, # 415 (Plaintiff testifying at his deposition that he "marked it as legal mail when it's not legal mail."). As the Magistrate Judge summarized: "At most, construing all facts in Plaintiff's favor, he has alleged an inability to send non-legal mail to [a news station] on one occasion."[3] Doc. 65, # 1129. Generally, "isolated incidents of interference with prisoners' mail" do not rise to the level of a constitutional violation. *Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000).

Plaintiff has given the Court no reason to conclude otherwise. In his objections, he claims that the Defendants' conduct violated various rights which he asserts without supporting authority. *See, e.g.*, doc. 67, # 1168 ("Hall has a right to address

[3] Though Plaintiff's complaint appears to allege two instances of mail interference, the Magistrate Judge observed that (1) they were unrelated and (2) the first instance was the subject of a state court ruling incident to Plaintiff's criminal case, and thus the Court is without jurisdiction to grant relief with regard to that alleged incident, because doing so would "imply that the state-court judgment… was incorrect." *Pieper v. Am. Arb. Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir. 2003). In the lead up to his criminal trial, Plaintiff sought to dismiss the charges against him based on "outrageous government conduct," referring to the interception of his falsely labeled "legal mail" and the prosecution's attempt to use it as evidence at trial. *See* doc. 54-3; *see also id.* at # 836 (investigating officer testifying that Hall's letters from the jail appeared to be trying to influence his criminal case). The state court judge denied the motion, finding that the mailing in question was not legal mail and that Plaintiff "admit[ted] that he anticipated that it would be reviewed," as further evidenced by his use of code names and other measures to obscure the content of the communication. *Id.* at # 886. The Court agrees with the Magistrate Judge's conclusion that it is without jurisdiction to adjudicate Plaintiff's claim with regard to the earlier letter.

the press and seek help to shed light to the corruption in his case and the illegal conduct by jail staff."); *id.* at # 1169 ("Hall has a Constitutional Right to be in the presence of any staff member who opens **any** mail marked as legal mail."). The authorities he *does* cite are Ninth Circuit cases, which are not binding on this Court. He does not dispute that the mail in question was not, in fact, legal mail. He appears to primarily argue that opening mail *marked* as "legal mail" outside his presence is still wrongful, regardless of its actual content.[4] Again, he cites no authority for this proposition.

For these reasons, the Court finds that Defendants are entitled to judgment as a matter of law on Plaintiff's claim regarding his mail.

*2. Classroom Claim.*

Regarding this claim, Plaintiff alleged in his amended complaint that Defendants Elliott and Flowers placed him "in a cold classroom until 4 AM the night before [he] had court." Doc. 5, # 53. At the screening stage, the Magistrate Judge construed this to possibly raise a First Amendment access-to-courts claim and/or a Fourteenth Amendment conditions-of-confinement claim. *See* doc. 10, # 99-100 n.2. In the current R&R, the Magistrate Judge concluded that, construing all facts and

[4] As the Magistrate Judge points out, "to the extent Plaintiff may be contending that Defendants violated institutional policy regarding the handling of his mail, any such claim also fails." Doc. 65, # 1129 (citing *Rush v. Burton*, No. 4:23-CV-67-DCLC-CHS, 2024 WL 54599, at *2 (E.D. Tenn. Jan. 4, 2024)). Regardless, in his objections, Plaintiff concedes that Defendants knew his purported "legal mail" was inaccurately labeled as such "because it was not going to his attorney, probation officer, or judge." Doc. 67, # 1169. Furthermore, institutional policy required inmates to fill out a form to submit with their legal mailings. *See* doc. 54-3, # 812-13. Regarding that step in the process, Plaintiff testified "I don't do that." *Id.* at # 813. Defendants' handling of mail which they correctly understood to be non-legal mail did not violate institutional rules regarding the handling of legal mail.

reasonable inferences in his favor, Plaintiff had failed to establish the viability of either claim. Doc. 65, # 1132. The Court agrees.

As the Magistrate Judge explained, "[a] Plaintiff represented by counsel in a pending criminal case 'cannot state a claim for a violation of his right to access the courts with respect to those proceedings.'" *Id.* at # 1131 (quoting *Talley v. Dickson Cnty. Jail*, No. 3:23-CV-00983, 2023 WL 7115566, at *2 (M.D. Tenn. Oct. 27, 2023)). Plaintiff alleges that he "had court at 8 AM" following the classroom incident. He attended the scheduled hearing and was represented by counsel. He makes no effort to show that Defendants' actions caused substantial prejudice to him in that proceeding, let alone the other necessary elements of a First Amendment access-to-courts claim. *See Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023) (listing four elements).

For a Fourteenth Amendment conditions-of-confinement claim regarding pretrial detention, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Plaintiff's recollection varies—he claims he was placed in the classroom sometime after 10pm and remained there until "the early morning hours of the [next] day, 1, 2:00, 3:00, maybe." Doc. 52, # 336. Plaintiff claims that the incident started when Defendant Flowers approached him in the bathroom and "stepped inside to incite [Plaintiff] to swing on [Flowers]." Doc. 5, # 53. Though it's unclear what Flowers allegedly said, Plaintiff could recall that he did not use force. Doc. 52, # 328. Whatever occurred

between Plaintiff and Flowers in (or near) the bathroom was entirely verbal, before Defendant Elliott intervened and the officers brought Plaintiff to the classroom. *Id.*

Based on the above facts, the Court agrees with the Magistrate Judge that Plaintiff has not stated a viable claim regarding the classroom incident. A brief segregation that is "reasonably related to a legitimate governmental objective" (*Wolfish*, 441 U.S. at 539) does not violate Plaintiff's Fourteenth Amendment rights. Courts in this circuit have found no violation when pretrial detainees have been segregated for 45 days (*see Elliot v. Conner*, No. 3:23-CV-01008, 2023 WL 7545036, at *3 (M.D. Tenn. Nov. 13, 2023)) or even as long as 10 months (*see Webb v. Bucholtz*, No. 1:20-CV-1036, 2021 WL 804721, at *3 (W.D. Mich. Mar. 3, 2021)). Plaintiff's longest estimate as to how long he was in the classroom was approximately 7 hours. Because he has failed to state a viable claim related to the classroom incident, Defendants Flowers and Elliott are entitled to summary judgment on those claims.

*3. Retaliation Claim Against All Defendants.*

Plaintiff alleges that Defendants retaliated against him for filing grievances. The Magistrate Judge concluded that questions of fact precluded summary judgment for either party on Plaintiff's retaliation claim against Defendant Elliott, but that summary judgment was otherwise warranted for the Defendants as to any retaliation allegations.[5] After considering the objections, on *de novo* review, the Court finds that summary judgment is warranted for all Defendants on this claim.

---

[5] The Magistrate Judge also noted that Plaintiff raised certain retaliation-related allegations for the first time in his motion for summary judgment, but that such arguments could not be considered pursuant to Fed. Rule Civ. P. 56. *See also Baxter v. Ry. Exp. Agency, Inc.*, 455 F.2d 693, 696 (6th Cir. 1972) ("The unsworn averments of a complaint will not suffice, on motion

To prevail on a First Amendment retaliation claim, Plaintiff must show (1) that he was engaged in protected conduct; (2) that he suffered an adverse action "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) that the protected conduct was a but-for cause of the adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996)). Furthermore, "restricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010). Thus, in the instant case, the first two elements are easily established by the undisputed fact of Plaintiff's filing of grievances and his subsequent administrative segregation.

The third element concerns the "subjective motivation of the defendants." *Thaddeus-X*, 175 F.3d at 399. A plaintiff may point to circumstantial evidence, "like the timing of events or the disparate treatment of similarly situated individuals," to establish a sufficient question of fact to present this issue to a jury. *Id.* However, "an 'inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory.'" *Spies v. Voinovich*, 48 F. App'x 520, 524–25 (6th Cir. 2002) (quoting *Smith v. Halford*, 570 F.Supp. 1187, 1194–95 (D.Kan.1983). Once

---

for summary judgment, to put in issue facts set out and sworn to in an affidavit supporting such motion."). It is unclear whether Plaintiff is objecting to that conclusion, but regardless, the Court concludes the same.

a plaintiff has met his burden, the burden shifts to the defendant(s) to show that they "would have taken the same action in the absence of the protected activity." *Thaddeus-X*, 175 F.3d at 399.

The Magistrate Judge helpfully summarized the substance of Plaintiff's retaliation allegations:

> To the best of the Court's understanding, Plaintiff filed a grievance on September 4, 2022, complaining of a C/O telling him a racist joke and using a racist slur, prompting a conversation with Defendant Carr. (Exhibit P-N, ECF No. 55-6 at 14; PAGEID #: 994.) On September 7, 2022, Plaintiff filed the grievance against Defendant Flowers relating to his prayer rugs. (Exhibit P-S, ECF No. 55-7 at 18; PAGEID #: 1011.) Shortly after Plaintiff filed these grievances, a shakedown occurred in Plaintiff's dorm. On September 10, 2022, Plaintiff filed a grievance questioning the bedsheet violation, suggesting that the shakedown occurred sometime between September 7 and September 10, 2022. (Hall Depo. Vol. I, Exhibit N, ECF No. 52 at 187; PAGEID #: 485.) In that grievance, Plaintiff states that Defendant Flowers found extra bedding on "multiple people's rack[s] and they did not get punished for the same actions." (Id.) Plaintiff also cites to another grievance he claims to have filed on September 10, 2022. (Exhibit P-T, ECF No. 55-8 at 1-8; PAGEID ##: 1013- 1014.) According to that document, Plaintiff admits to having had an extra bed sheet and blanket and acknowledges the necessity that he be placed in lockdown and take responsibility for his actions. (Id.) The document does not refer to Defendant Flowers' or Defendant Elliot's involvement in the alleged incident.

Doc. 65, # 1136. The Magistrate Judge found that the allegations summarized above were sufficient, for the purposes of summary judgment, to establish the first two elements of a retaliation claim and to shift the burden of production to the Defendants on the third element. *See Id.* at # 1139-40 ("[O]n this record, the Court cannot

conclude that Plaintiff's filing a grievance… was not the but for cause of Plaintiff's being placed in administrative segregation for his possession of an extra bedsheet.").

The Magistrate Judge further concluded that Defendants failed to establish that the Plaintiff would have been placed in administrative segregation for possessing an extra bedsheet in the absence of his grievance:

> Defendants also have not addressed this issue in moving for summary judgment. To be sure, they have argued that Plaintiff violated numerous jail rules during his time in the Washington County Jail. (ECF No. 54 at 15; PAGEID #: 723.) Further, they have provided evidentiary support for this assertion relating to Plaintiff's throwing another inmate's belongings on the floor in October 2021 (Hall Depo. Vol. II, Exhibit V, ECF No. 53 at 119; PAGEID #: 614); violently assaulting another inmate in February 2022 (*Id.* Exhibit W, ECF No. 53 at 122-132; PAGEID ##: 617-627), committing a theft offense in April 2022 (*Id.* Exhibit X, ECF No. 53 at 137; PAGEID #: 632), and concealing a razor in extra bedsheets in May 2022. (*Id.* Exhibit Y, ECF No. 53 at 144-152; PAGEID ##: 639-647.) They have not, however, addressed whether Plaintiff would have been sent to administrative segregation for possessing an extra bed sheet in the absence of his September 2022 grievance which prompted a response from Defendant Carr.

*Id.* at # 1140. As to this conclusion, the Court respectfully disagrees.

As Defendants point out, prior to Plaintiff's September 2022 grievance and his subsequent administrative segregation due to possession of an extra bedsheet, he received 14 days of administrative segregation in May 2022 following the discovery of an extra razor in his cell. *See* doc. 55-6, # 981. This is strong evidence that Plaintiff would have been subjected to the same adverse action in the absence of protected conduct. While the Magistrate Judge specifically referred to adverse action "for possessing an extra bedsheet," (doc. 65, # 1140), the Court finds that possessing an

extra razor is a sufficiently comparable infraction. Sure, a razor is presumably more dangerous than an extra bedsheet, but the written narrative regarding the extra razor discipline betrays no safety concern beyond the violation of institutional rules. *See* doc. 55-6, # 981 (possession of extra razor punished "for violating Major Rule Violation #18: Possession of Contraband."). Regardless, Plaintiff received only 10 days of lockdown for the extra sheet, compared with 14 days for the extra razor.

Plaintiff points out that he was "the only person to go to the hole" following the discovery of his extra bedsheet during a shakedown of the entire dorm. Doc. 55, # 906. This does not suffice to establish, as circumstantial evidence of retaliation, that he was treated differently than similarly situated inmates. The fact that Plaintiff had a history of discipline (for prior possession of contraband as well as assault and theft, referenced above) further dilutes his already-thin case for comparators, as he gives no evidence that other inmates had similar disciplinary histories. Finally, the May 2022 contraband infraction was written up by different jail staffers who are not party to this lawsuit, and the Court agrees with Defendants that that fact further supports their showing that the same adverse action would have been taken against Plaintiff in the absence of his grievance.

In contrast, the Court finds that Plaintiff has failed to produce evidence from which a jury could reasonably find that Defendants would not have taken the same adverse action against Plaintiff in the absence of his grievance. Therefore, summary judgment is warranted for Defendants on Plaintiff's retaliation claim.

*4. Equal Protection Claim Against Elliott and Flowers.*

Plaintiff has failed to establish the necessary showing for his equal protection claim to survive summary judgment. As the Magistrate Judge notes, his claim is "wholly conclusory," and his arguments at the summary judgment stage fare no better. Doc. 65, # 1141. "At most, for purposes of an equal protection claim, [Plaintiff] has offered only vague allegations that other unidentified individuals were not punished for similar infractions." *Id.* at # 1142; *but see Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 529 (6th Cir. 2023) ("For summary judgment purposes, however, a bare assertion that a plaintiff 'was treated one way and everyone else another ... has never been thought to raise an equal protection claim.'"). In his objections, Plaintiff claims that his disparate treatment is established by his grievances and otherwise claims that undiscovered documents would show "that these officers had never violated any other pretrial detainee/prisoners' attorney-client privileges, used racial slurs, or constantly harassed them." Doc. 67, # 1174.

Plaintiff produces no evidence supporting his claims. As discussed above, Plaintiff's references to other inmates (or lack thereof) are wholly conclusory, without any apparent basis to support statements like "[Plaintiff was] the only person to be taken out the dorm, counseled, placed in a lockdown cell, and not have his grievances filed." *Id.* With such sparse and undeveloped allegations, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

*5. "Blue Ink" Claim.*

The Magistrate Judge recommended that summary judgment be granted in favor of Defendant Ison on Plaintiff's claim about blue ink in his food. The Court agrees and will adopt that recommendation.

In his amended complaint, Plaintiff described an incident in which he found a note underneath his chicken, with blue ink from the note apparently "seep[ing]" (doc. 54, # 726) into the chicken. *See* doc. 5, # 55. He described "tr[ying] to report this to an officer" but he was "ignored." *Id.* Then, the next morning, "Ison came… to take [Plaintiff] to the hole for corresponding with other inmates." *Id.* This discipline was apparently connected to the note in Plaintiff's food, because when he showed Ison his notebook in which he had recorded the note-in-the-food incident from the previous day, Ison decided against disciplining him. *Id.*

Plaintiff does not know who put the note under his chicken. Doc. 67, # 1176. So, as the Magistrate Judge concluded, Ison cannot be held personally liable for putting the note under the chicken. *See* doc. 65, # 1144. That leaves only the theory that Ison failed to investigate Plaintiff's complaint about the note in his food. But, as the Magistrate Judge noted, "[t]he failure to investigate a prisoner's complaint or grievance does not state a claim for relief." *Smith v. Washington*, No. 2:23-CV-12903, 2024 WL 233730, at *3 (E.D. Mich. Jan. 22, 2024) (citing *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003)).

Plaintiff's objections do not displace this conclusion. He attempts to recharacterize the note under his chicken as "someone attempt[ing] to poison and

cause life threat[en]ing harm to [Plaintiff]." Doc. 67, # 1176. Even if this were a reasonable inference from the facts alleged, Plaintiff would still be simply alleging a failure to investigate his complaint, which provides no basis for relief. Summary judgment is warranted for Defendants on this claim.

*6. Supervisory Liability Claim Against Carr*

Plaintiff alleges that Defendant Carr is liable for failing to perform his duties as a supervisor of other officers, thereby allowing their allegedly unconstitutional conduct to persist. But the *respondeat superior* theory of liability is not applicable to § 1983 actions such as this one. *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995). As such, the Magistrate Judge recommended that summary judgment be granted in favor of Defendant Carr on this claim.

Plaintiff's objections make clear that he is indeed pursuing a *respondeat superior* theory of liability. *See* doc. 67, # 1179. For example, he claims Carr "could have put a stop to [Plaintiff's] attorney-client privileges being violated," and that he "did not ensure due process was applied" when mail intercepted by Elliott was used against Plaintiff in his criminal case. *Id.* He also argues that Carr "became personally involved when he spoke directly to [Plaintiff] and placed a tape recorde[r] on the table and informed [Plaintiff] this could be used later in Court." *Id.* But this does not state any basis for liability.

Because Plaintiff solely relies on a theory of *respondeat superior* in his claim against Defendant Carr, and because such a theory is not viable for Plaintiff's claim, summary judgment is warranted for Defendant Carr.

## CONCLUSION

For the reasons stated above, the Court **ADOPTS**, in part, the Report and Recommendations (doc. 65) of the Magistrate Judge. Accordingly, the Court **OVERRULES** Plaintiff's objections (doc. 67) to the Report and Recommendations and **DENIES** Plaintiff's motion for summary judgment (doc. 55). Furthermore, the Court **OVERRULES** in part and **SUSTAINS** in part Defendants' objections (doc. 66) to the Report and Recommendations, **DENIES** Defendants' motion for judgment on the pleadings (doc. 58), and **GRANTS** Defendants' motion for summary judgment (doc. 54) for all remaining claims in the Amended Complaint (doc. 5).

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 23, 2026